F. INDUSTRIES, INC., PLAINTIFF v. HARVEY A. COX, D/B/A TRANSPORT EQUIPMENT AND TRANSPORT SALES OF CHARLOTTE, INC., DEFEND-ANTS, AND VAN F. MILLER AND WIFE, BETTY E. MILLER, THIRD-PARTY DEFENDANTS

No. 7923SC699

(Filed 18 March 1980)

1. Contracts § 27.1— insufficiency of evidence to show definite contract

The trial court properly entered a directed verdict for defendant in plaintiff's action to recover damages for defendant's alleged breach of an oral contract to convey to plaintiff the "patent rights" for truck tractors purchased by plaintiff from defendant where the evidence showed that the agreement, if any, concerning the conveyance to plaintiff of "patent rights" was so general, vague and indefinite as to be incapable of ascertainment and enforcement, and the evidence also showed that plaintiff had to purchase six tractors in order to secure any rights whatsoever and that he purchased only three.

2. Contracts § 27.2— breach of contract—value of parts retained by opposing party

The trial court properly submitted to the jury issues as to plaintiff's breach of contract and the amount defendant was entitled to recover for the value of parts retained by plaintiff where there was evidence tending to show that plaintiff agreed to buy four trucks from defendant, that plaintiff was to receive spare parts at no extra cost if it purchased a minimum of four trucks, that plaintiff stopped payment on the check for the fourth truck and returned that truck to defendant, and that plaintiff refused either to return or pay for the spare parts it had received from defendant.

3. Contracts § 26.3— list and value of parts—competency

A list of spare truck parts delivered by defendant to plaintiff with the fair market value of each part as assigned by defendant was not inadmissible hearsay and was properly admitted by the court to demonstrate how defendant arrived at his opinion of the fair market value of all the parts.

4. **Rules of Civil Procedure § 15.1— denial of motion to amend reply —no abuse of discretion**

The trial court did not abuse its discretion in the denial of plaintiff's motion made at the end of its evidence to amend its reply to allege the statute of frauds as a defense to defendant's counterclaim. G.S. 1A-1, Rule 15.

5. **Appeal and Error § 15— cross-assignments of error —failure to give notice of appeal**

Defendant's cross-assignments of error relating to the granting of a directed verdict for the individual third-party defendants were not properly before the appellate court where defendant failed to give notice of appeal from the ruling of the court and the judgment entered thereon as required by Rule 3 of the N.C. Rules of Appellate Procedure.

APPEAL by plaintiff from *Rousseau, Judge*. Judgment entered 13 April 1979 in Superior Court, ALLEGHANY County. Heard in the Court of Appeals on 7 February 1980.

This is an action on an alleged oral contract for the purchase and sale of Hendrickson "tractors" or over-the-road trucks. In a complaint filed 8 November 1978, plaintiff claimed that, through its principal officer and agent Van Miller, Jr., it contracted with the defendant Cox to purchase four such trucks at a price of $13,250.00 per truck, and that, upon purchasing two trucks, it would receive spare parts for and patent rights to the trucks at no additional cost. Plaintiff further alleged that it had received and paid for three trucks; that the fourth truck was in its possession; and that it had received a "certain quantity" of parts, but had not been furnished the patent rights. Failure of the defendant to "sign over" the patent rights, plaintiff contended, constituted a breach which had damaged it in the amount of $25,000.00, "the difference between the value of the trucks with accompanying patent rights and [their] value . . . without [such] rights under the contract."

Answering, the defendant Cox admitted that the plaintiff's agent Miller had in his possession at the time the complaint was filed four Hendrickson trucks and a large quantity of parts, but denied the existence of a contract as alleged in the complaint. Cox also filed a counterclaim against the plaintiff, F. Industries, and a claim against the third-party defendants Van and Betty Miller wherein he asserted that, in September 1978, he sold two of the trucks to the defendant Transport Sales of Charlotte, Inc.; that Transport Sales sold those vehicles to Miller on 20 September

and 27 September 1978; and that he then entered into an agreement with Miller which provided that, if Miller purchased two more trucks, Cox would give him the parts he still owned. Cox further alleged that Miller took possession of the third truck and a portion of the parts on 28 September 1978; that he took possession of the fourth truck and the remainder of the parts on 6 October 1978 and agreed at that time to purchase the last two trucks defendant owned; and that he [Cox] then agreed to assign to Miller "any rights he had under the Purchase Agreement dated January 11, 1977, from Ryder Truck Rentals, Inc.", the company from whom Cox had purchased the trucks, "and did so on the reverse side of the last page of said agreement." Thereafter, Miller stopped payment on the check he had given Cox for the fourth truck. He subsequently returned the truck, but refused to return any parts. Cox claimed damages in the amount of $50,830.00, which he alleged was the fair market value of the parts.

In response, the third-party defendants alleged that, in purchasing the trucks, Van Miller was acting at all times as the agent of the plaintiff, F. Industries. Plaintiff replied and in substance denied the allegations of the counterclaim.

Evidence developed at trial which is pertinent to the decision in this case will be discussed in the opinion to follow. At the close of the plaintiff's evidence, Judge Rousseau allowed the defendant's motion for a directed verdict as to plaintiff's claim. At the close of the defendant's evidence, he allowed the motion for a directed verdict in favor of the individual third-party defendants. With respect to the defendant's counterclaim, Judge Rousseau submitted the following issues to the jury which were answered by it as indicated:

1. Did the plaintiff breach his contract with the Defendant as alleged in the Answer?

ANSWER: Yes.

2. If so, what amount, if any, is the Defendant entitled to recover from the Plaintiff for:

a. Value of the parts?

ANSWER: $20,000.00.

    b. Loss of use of vehicles?

      ANSWER: 0.

    c. Expenses to recover vehicles?

      ANSWER: $50.00.

From judgement entered on the verdict, plaintiff appealed.

*McElwee, Hall, McElwee & Cannon, by William C. Warden, Jr., for plaintiff appellant and for the third-party defendant appellees.*

*Sanders, London & Welling, by Charles M. Welling, for defendant appellees.*

HEDRICK, Judge.

[1]  Based on six exceptions duly noted, plaintiff argues that the court erred in directing a verdict for the defendant Cox as to plaintiff's claim and in refusing to direct a verdict for it as to defendant's counterclaim. These assignments of error present for our review the sufficiency of the evidence to show the existence of contractual terms as alleged in plaintiff's complaint. Plaintiff contends that its evidence establishes a contract entered into between its agent Miller and the defendant Cox which included, in addition to their agreement to buy and sell four Hendrickson trucks, a promise that the plaintiff would receive spare parts and "patent rights" to the trucks at no extra cost. Defendant concedes the existence of a contract with plaintiff to buy and sell the four trucks and the spare parts. He insists, however, that he promised to include the parts at no additional cost only if the plaintiff actually purchased four trucks. At no time, Cox contends, did the parties enter into an agreement respecting "patent rights." Moreover, he testified that he did not now own, nor had he ever owned, any such rights on the trucks. Thus, the first question we must answer is whether the plaintiff's evidence is sufficient to raise an issue of fact for the jury to determine if these parties contracted with respect to "patent rights." We agree with Judge Rousseau that it is not.

    The contract at issue in this case was never reduced to a formal written instrument. At most, the record contains mere assertions by the plaintiff's agent Miller that he was supposed to

receive all the "paper work," by which he meant "all the patent rights that come with the Hendrickson tractor." It is impossible to decipher from Miller's testimony exactly what it was the parties allegedly intended the "patent rights" to cover, their extent or their value. For example, it appears from the record that the trucks were designed by one company (Ryder) and manufactured by another (Hendrickson). Some apparently were equipped with Cummins engines; others had the "Detroit engine." Presumably, various other parts which went into making up the whole of the Hendrickson trucks—such as the tires, the batteries, the mufflers—were manufactured by still other companies. Logic and common sense would thus suggest that a number of patents held by numerous individuals or entities would exist on a single truck. Surely plaintiff did not expect to acquire "all the patent rights that come with the Hendrickson tractor" by virtue of purchasing four of them from the defendant. Yet, he was unable at trial to delineate any more clearly what "rights" to the trucks he allegedly contracted to receive from Cox.

It is axiomatic that "[a] court cannot enforce a contract unless it can determine what it is." 1 Corbin, *Contracts* § 95 at 394 (1963); *accord,* 3 Strong's N.C. Index 3d, *Contracts* § 3 (1976). In order to constitute a valid and enforceable written or verbal agreement, the parties must express themselves in such terms that the court can ascertain to a reasonable degree of certainty what they intended by their agreement. In the instant case, the agreement, if any, respecting the conveyance to plaintiff of "patent rights" is so general, vague and indefinite as to be incapable of acertainment, much less enforcement.

Neither are we persuaded that plaintiff's evidence of the "value" of the "patent rights," in the form of opinion testimony by Miller, supplies adequate contours to the alleged contract to enable the jury to ascertain its substance. Hence, whether Judge Rousseau was correct in striking that testimony prior to ruling against the plaintiff on the defendant's motion for a directed verdict is of no consequence to our decision.

Plaintiff's case is weakened even more by one of its own exhibits. The defendant Cox testified that, after plaintiff had purchased the first three trucks, he and plaintiff's agent Miller discussed plaintiff's purchasing three more trucks. According to

Cox, he agreed during a meeting with Miller on 6 October 1978 to assign to Miller any rights in the trucks he had under his purchase agreement with Ryder Truck Rentals, Inc., and he made a notation to that effect on the reverse side of the purchase agreement. Plaintiff's Exhibit No. 14 is the purchase agreement between Ryder as seller and the defendant Cox as purchaser of "ten (10) vehicles and vehicle spare parts". On the back of the last page appears the following handwritten notation:

October 6, 1978

I Harvey A Cox will assign and delegate all my rights given in the agreement that this is written on pertaining to the Ryder designed, Hendrickson manufactured trucks to Van Miller Jr. These rights are not being sold, but assigned at no cost under the conditions that Mr. Miller purchase the other three tractors as agreed.

Harvey A Cox
Witness Jesse L. Moore

This memorandum, which Cox admits he wrote and signed, is the only concrete and unambiguous evidence in the record as to any "rights" Miller was to acquire in the trucks. The purchase agreement makes no mention of "patent rights." Moreover, the logical inference from this writing is that Miller had to purchase a total of six trucks in order to secure any rights whatsoever. He admits he bought only three. In our opinion, this evidence, coupled with the dearth of specific facts showing the existence of the alleged agreement respecting "patent rights," fully justifies and compels the entry of a directed verdict against the plaintiff on its claim. The evidence was plainly insufficient for the jury which would have been required to guess whether such an agreement was part of the contract actually made.

[2] To the contrary, the issues raised by the defendant's counterclaim were properly submitted to the jury for determination. Neither plaintiff nor defendant disputes the existence of an agreement between them to buy and sell Hendrickson trucks and spare parts. Their dispute arises from and revolves around the construction of Cox's promise to include the spare parts at no additional cost. That is, was the plaintiff obligated under their bargain to purchase four trucks before it was entitled to keep the

parts? Unlike the issue of "patent rights" where no agreement which can be interpreted has been shown to exist, the question raised by the evidence as to the parts clearly involves only a factual determination which essentially boils down to an issue of credibility. Given the admitted agreement to include the parts, it becomes the task of the fact-finder to decode the parties' intentions and, as in any other case, to decide which side it will believe. In answering "yes" to the first issue, the jury in this case, on credible evidence, found that the parties intended for plaintiff to receive the parts at no extra cost only if it purchased a minimum of four trucks. Hence, plaintiff's actions in stopping payment on the check for the fourth truck, returning that truck to defendant, and refusing to either return or pay for the parts constitute a breach and render the plaintiff liable in damages.

[3]   We turn, then, to a consideration of plaintiff's third assignment of error whereby it argues that the court erred "in admitting into evidence a list of the parts and values of the parts [in its possession] compiled by the defendant." Plaintiff contends that the list constitutes inadmissible hearsay.

The list in question consists of an itemization of the parts delivered to Miller, who does not contend that he does not have possession of every item thereon, and a fair market value per item as assigned by Cox. Upon objection, plaintiff's counsel was allowed to examine Cox concerning the preparation of the list, and the following evidence was thereby elicited:

Q. Mr. Cox, when did you prepare that list?

A. This list was prepared from my records there in my office and given to Mr. Welling after the—this procedure was started.

Q. Was it prepared after the parts had already been delivered to Mr. Miller?

A. Yes, sir.

Q. Was it prepared from, partly from memory?

A. No, sir, it was prepared from my inventory.

Q. Where is that inventory?

A. In Orlando, Florida.

The list was allowed into evidence, and Cox was allowed to testify that, in his opinion, the total fair market value of the parts in Miller's possession was $50,830.00. In rebuttal, plaintiff was allowed to offer evidence that the total value of the parts was only $2,000.00. The jury found their value to be $20,000.00.

Obviously, the list is nothing more than an itemization of the parts sold and delivered by the defendant to the plaintiff. The fair market value attributed by defendant to each item merely demonstrates the manner in which defendant arrived at his opinion as to the fair market value of all the parts. Under the circumstances we find no error in the court's allowing the list into evidence.

[4] By assignment of error number 4, plaintiff argues that the court erred "in overruling the Motion of the plaintiff to amend its Reply" to assert the Statute of Frauds as a defense to the counterclaim. The motion was not made until the plaintiff had rested its case—*i.e.*, about halfway through the trial. In denying the motion, Judge Rousseau gave as his reason the lateness of it. We think it suffices to say that the allowance or disallowance of motions to amend pleadings is a matter committed to the broad discretion of the trial judge whose ruling thereon is not reviewable on appeal in the absence of a showing of abuse of that discretion. G.S. § 1A-1, Rule 15; *Markham v. Johnson*, 15 N.C. App. 139, 189 S.E. 2d 588, *cert. denied*, 281 N.C. 758, 191 S.E. 2d 356 (1972). In our opinion, the plaintiff has failed to make such a showing under the circumstances of this case, and Judge Rousseau's ruling on the motion will not be disturbed.

Finally, plaintiff contends that the court erred in refusing to instruct the jury that the defendant's recovery on his counterclaim "would have to be lessened or reduced by the value of the tractor" which plaintiff returned to Cox. Plaintiff apparently argues that, at the time it purchased the fourth truck and before Miller stopped payment on the check for that truck, it had fully performed the conditions of the contract which would entitle it to receipt of the parts at no extra cost.

This argument is nonsensical at best. Plaintiff's rejection of the fourth truck constituted a breach of the contract terms, as determined by the jury, and, upon its breach, it was no longer entitled to performance by the defendant. The issue at that point

becomes a simple one of measuring the damages to which the non-breaching party is entitled for the breach. Therefore, plaintiff's further assertion that defendant has recovered more in damages than he would have under the contract misses the mark. Once plaintiff breached the agreement, defendant was entitled to the return of the parts or to their value in damages. Plaintiff having chosen to retain possession of the parts, the question of their value was properly submitted to the jury. The value of the truck which plaintiff returned to defendant is, we think, irrelevant to the determination of how much plaintiff owes defendant for the spare parts.

[5] Defendant Cox purports to bring forward and argue cross-assignments of error relating to the granting of a directed verdict in favor of the individual third-party defendants. However, he failed to give notice of appeal from the ruling of the court and judgment entered thereon as required by Rule 3 of the N.C. Rules of Appellate Procedure, and thus his assignments are not before this Court. Rule 10(d) of the Appellate Rules, which allows an appellee to cross-assign as error actions or omissions of the trial court and to argue such assignments without taking an appeal is not applicable in the present case for the reason that Rule 10(d), by its terms, applies solely to errors "which deprived the appellee of an alternative basis in law for supporting the judgment. . . ." Defendant does not argue, nor does it appear, that such is the case here.

Finally, it appears from the record and from the arguments of counsel before us that defendant has in his possession the certificate of title respecting ownership of the third truck. It is conceded by defendant that plaintiff, having purchased and fully paid for the vehicle, is now entitled to the document.

The result is: The judgment directing a verdict for the defendant as to the plaintiff's claim is affirmed. As to the defendant's counterclaim, we find no error.

Affirmed in part; no error in part.

Judges VAUGHN and CLARK concur.