Window World of N. Atlanta, Inc. v. Window World, Inc., 2021 NCBC 61.

STATE OF NORTH CAROLINA

WILKES COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 70

WINDOW WORLD OF NORTH
ATLANTA, INC.; MICHAEL
EDWARDS; and MELISSA
EDWARDS,

            Plaintiffs,

v.

WINDOW WORLD, INC.; WINDOW
WORLD INTERNATIONAL, LLC;
and ANDREW SAVILLE,

            Defendants.

**ORDER AND OPINION ON
DEFENDANTS' JOINT MOTION FOR
LEAVE TO AMEND THEIR ANSWERS
TO ASSERT ADDITIONAL
AFFIRMATIVE DEFENSES AND
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

1.    **THIS MATTER** is before the Court upon (i) Defendants Andrew Saville

("Saville"), Window World, Inc. ("Window World"), and Window World International,

LLC's (together, the "Window World Defendants"; collectively with Saville,

"Defendants") Joint Motion for Leave to Amend Their Answers to Assert Additional

Affirmative Defenses (the "Motion to Amend") filed 25 November 2020, (ECF No.

137), and (ii) Defendants' Motion for Summary Judgment (the "Summary Judgment

Motion"; together with the Motion to Amend, the "Motions") filed 22 December 2020,

(ECF No. 153),[1] in the above-captioned case.

2.    Through the Motion to Amend, Saville seeks leave to amend his answer to

assert the affirmative defenses of statute of limitations and waiver and the Window

World Defendants, having already asserted waiver as a defense, seek leave to amend

---

[1] For the purposes of this Order and Opinion, the Court cites to the corrected Summary Judgment Motion, supporting brief, and attachments. The original Summary Judgment Motion, supporting brief, and attachments were filed on 11 December 2020 and are located at ECF Nos. 148, 148.1–.17, 149, 149.1–.5, 150, 150.1, 151.

their answer to assert the affirmative defense of statute of limitations. Defendants contend that their Motion to Amend is timely because the information upon which it is based arose during the 8 October 2020 deposition of Plaintiff Michael Edwards ("Edwards").

3. On the Summary Judgment Motion, Defendants argue that Plaintiffs have failed to offer evidence that Edwards and Todd Whitworth ("Whitworth"), the now-deceased Chief Executive Officer of Window World, entered into a valid oral contract in 2008 granting Edwards the exclusive right to operate Window World stores in fifty-five counties in the Atlanta, Georgia area. Defendants further contend that, even if Edwards and Whitworth entered into a valid oral contract, Plaintiffs' declaratory judgment and breach of contract claims are barred by the applicable statute of limitations and waiver.

4. Having considered the Motions, the related briefs, the arguments of counsel at the hearing on the Motions, and other appropriate matters of record, the Court hereby **GRANTS in part** and **DENIES in part** the Motion to Amend and **DENIES** the Summary Judgment Motion as set forth below.

*Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by Charles E. Coble, Andrew L. Rodenbough, Benjamin R. Norman, and Robert J. King, III, and Keogh Cox & Wilson, Ltd., by John P. Wolff, III, Virginia J. McLin, and Richard W. Wolff, for Plaintiffs Window World of North Atlanta, Inc., Michael Edwards, and Melissa Edwards.*

*Wilson Ratledge, PLLC, by Reginald B. Gillespie, Jr. and Alexandra M. Bradley, for Defendant Andrew Saville.*

*Manning, Fulton & Skinner, P.A., by Judson A. Welborn, Michael T. Medford, Natalie M. Rice, and Jessica B. Vickers, and Laffey, Leitner & Goode LLC, by Joseph S. Goode, Mark M. Leitner, Sarah E. Thomas*

*Pagels, John W. Halpin, and Jessica L. Farley, for Defendants Window World, Inc. and Window World International, LLC.*

Bledsoe, Chief Judge.

I.

FACTUAL BACKGROUND

5. The Court does not make findings of fact on a motion for summary judgment. *See Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142 (1975). Rather, the Court summarizes the relevant evidence of record, including both the facts in dispute and those that are uncontested, to provide context for the claims and the motion. The Court may consider relevant evidence of record in resolving a motion to amend.

6. Window World licenses the use of its trademarks to businesses, permitting such businesses to purchase, resell, and install vinyl replacement windows, doors, and siding under the Window World name. (Answer & Countercls. Defs. Window World & Window World International, LLC 2 [hereinafter "Window World Defs.' Answer"], ECF No. 24.) Window World currently operates as a franchise system. (Window World Defs.' Answer 2.)

7. Edwards and his wife, Plaintiff Melissa Edwards, previously owned and operated a Window World store in Huntsville, Alabama. (Window World Defs.' Answer 2.)

8. Two brothers, Tony and Mark Turner, each operated a separate Window World store in the Atlanta, Georgia area. (Defs.' Mot. Summ. J. [CORRECTED – Original Filed Dec. 11, 2020] [hereinafter "Defs.' Mot. Summ. J."] Attach. J Aff. Steve

Newton, dated Dec. 7, 2020, at ¶ 10 [hereinafter "Newton Aff."], ECF Nos. 153.11 (under seal), 166.4 (redacted).) Tony Turner operated in the Northeast Georgia ("NEGA") trade area, which consisted of six counties, and Mark Turner operated in the South Metro Atlanta ("South Metro") trade area, which consisted of eight counties. (Newton Aff. ¶¶ 10–16.) Due to the Turner brothers' alleged mismanagement of the stores, Window World sought to license the trade areas to another store owner in the fall of 2008. (Newton Aff. ¶ 17; Defs.' Mot. Summ. J. Attach. A Excerpts Dep. Michael Edwards, dated Oct. 8, 2020, at 31:10–32:25, 38:19–24 [hereinafter "Edwards Dep."], ECF No. 153.2.)

9.      In November 2008, Whitworth called Edwards and offered him the Atlanta territory, which Edwards accepted. (Edwards Dep. 27:9–10, 30:8–10, 41:1–3.) According to Edwards, the alleged oral agreement was for Edwards to receive the "whole Atlanta DMA" (Designated Marketing Area)[2] as his sales trade area. (Edwards Dep. 25:14–20; *see also* Pls.' Br. Opp'n Defs.' Mot. Summ. J. [hereinafter "Pls.' Summ. J. Opp'n Br."] Ex. B Excerpts Dep. Michael Edwards, dated Oct. 8, 2020, at 34:17–25 [hereinafter "Additional Excerpts Edwards Dep."], ECF No. 173.3; Edwards Dep. 17:14–15.) It was Edwards's understanding that, together, Tony and Mark Turner controlled the entire Atlanta DMA, (Edwards Dep. 33:18–25), which consisted of fifty-five counties in and around Atlanta, (Pls.' Summ. J. Opp'n Br. Ex. S 2009 Atlanta DMA Map, ECF No. 173.20; Newton Aff. ¶ 33; Defs.' Mot. Summ. J. Attach. C Exs. Edwards Dep. Ex. 35, ECF No. 153.4).

---

[2] "DMA" is defined in the complaint as the "Designated Marketing Area as defined by Nielsen Media Research[.]" (Compl. ¶ 1, ECF No. 3.)

10.   According to Edwards, he and Whitworth "come [sic] to an agreement about the Atlanta DMA [during] the initial phone call[,]" (Edwards Dep. 28:17–19), which was then "hashed . . . out in the coming days" through additional telephone conversations with other Window World representatives, (Edwards Dep. 27:5–28:11, 38:19–39:10; *see also* Pls.' Summ. J. Opp'n Br. Ex. F Dep. Blair Ingle, dated Nov. 29, 2017, at 326:12–327:12 [hereinafter "Ingle Dep."], ECF No. 173.7; Pls.' Summ. J. Opp'n Br. Ex. O Aff. Sean R. Gallagher, dated Dec. 28, 2017, at ¶¶ 20–21 [hereinafter "Gallagher Aff."], ECF No. 173.16[3]).

11.   Edwards took over Tony Turner's store in December 2008, before entering into any written contract.  (Edwards Dep. 94:4–96:12; Newton Aff. ¶¶ 20, 22–24; *see also* Additional Excerpts Edwards Dep. 156:10–158:3.)  But Edwards knew other Window World store owners had operated their stores pursuant to oral agreements they made with Whitworth, including agreements related to trade areas.  (Additional Excerpts Edwards Dep. 314:17–19; *see also* Gallagher Aff. ¶ 9 ("Many stores operated without any type of written agreement with WW in place, either because no contract had ever been signed or because the contract had expired.  I also found that the contracts frequently did not accurately reflect the parties' agreement, such as to territories.").)

12.   Shortly after Edwards began operating the store, Edwards testified that Whitworth made a "caveat" to their oral agreement, requesting that Edwards assume

---

[3] In 15-CVS-2, the Court ordered one paragraph of Gallagher's affidavit struck on the grounds that it contained privileged information.  (ECF Nos. 768 (under seal), 769 (redacted).)  Plaintiffs have redacted that paragraph of Gallagher's affidavit filed at ECF No. 173.16.

the debt previously incurred by Tony Turner. (Edwards Dep. 96:14–99:15.) Edwards agreed to do so "because [he]was getting the whole DMA." (Edwards Dep. 98:9–10.) Whitworth then made another "caveat" to the "original deal," asking Edwards to allow Mark Turner to remain in the South Metro trade area until his operating license expired in October 2009. (Edwards Dep. 48:17–51:7, 53:3–19, 55:15–56:7, 135:4–5.) Although "[i]nitially that wasn't the deal," (Edwards Dep. 50:21), Edwards testified that he again acquiesced to Whitworth's request because "when Mark [Turner]'s license was pulled and [Edwards] acquired that [trade area], then [Edwards] got the whole DMA at that point[,]" (Edwards Dep. 49:18–20).

13. In July 2009, Plaintiffs entered into a licensing agreement with Window World, which defined Plaintiff Window World North Atlanta, Inc.'s ("North Atlanta") trade area as the same six counties included in Tony Turner's former NEGA trade area. (Defs.' Mot. Summ. J. Attach. B Confidential Exs. Edwards Dep. Exs. 5, 6, ECF Nos. 153.3 (under seal), 166.2 (redacted); *see also* Edwards Dep. 78:10–81:6.) Plaintiffs executed a second licensing agreement with Window World in February 2010, which added the eight counties that were formerly included in Mark Turner's South Metro trade area to the North Atlanta trade area. (Defs.' Mot. Summ. J. Attach. B Confidential Exs. Edwards Dep. Exs. 5, 7, ECF Nos. 153.3 (under seal), 166.2 (redacted); *see also* Edwards Dep. 81:7–84:22.)

14. Whitworth passed away in February 2010. (Edwards Dep. 84:23–25.)

15. In November 2017, Window World created a Carrollton, Georgia trade area, composed of seven counties included in the Atlanta DMA, and subsequently licensed

that trade area to Saville and Michael Harkins. (*See* Defs.' Mot. Summ. J. Attach. I Aff. Zach Luffman, dated Dec. 2, 2020, at ¶ 15(g), ECF No. 153.10; Defs.' Mot. Summ. J. Attach. L Aff. Andrew Saville, dated Dec. 10, 2020, at ¶¶ 41–43, ECF No. 153.13.) Edwards testified that he viewed this as a breach of his oral agreement with Whitworth, (Edwards Dep. 324:10–18, 327:18–20; *see also* Pls.' Summ. J. Opp'n Br. Ex. D Excerpts 30(b)(6) Dep. Michael Edwards, dated June 19, 2018, at 331:23–332:24, ECF No. 173.5), and Plaintiffs initiated this lawsuit on 22 January 2018, asserting claims for (i) declaratory judgment against all Defendants; (ii) breach of contract and, in the alternative, unjust enrichment against Window World; and (iii) conversion, tortious interference with contract, and unfair and deceptive trade practices under N.C.G.S. § 75-1.1 against Saville, (Compl. ¶¶ 28–60).

II.

PROCEDURAL BACKGROUND

16. The Window World Defendants filed their answer and counterclaims, including the affirmative defense of waiver, on 26 March 2018. (Window World Defs.' Answer.)

17. Saville filed a motion to dismiss on 30 April 2018, (Saville's Mot. Dismiss Pursuant N.C. R. Civ. P. 12(b)(6), ECF Nos. 35, 37 (corrected)), and the Court dismissed the claims against Saville for conversion, tortious interference with contract, and unfair and deceptive trade practices under N.C.G.S. § 75-1.1 on 22 October 2018, (Order & Op. Saville's Mot. Dismiss, ECF No. 92).

18.    Saville subsequently filed his answer on 19 November 2018.    (Saville's Answer to Compl., ECF No. 94.)

19.    The parties thereafter jointly presented the Court with a proposed case management order, (Proposed Second Am. Case Management Order, ECF No. 101), which was later entered as an order of the Court on 22 April 2019 (the "Second Amended CMO"), (Second Am. Case Management Order [hereinafter "Second Am. CMO"], ECF No. 102).    The Second Amended CMO established two phases for discovery and summary judgment motion practice in this case: Phase I concerns issues related to contract formation, and Phase II concerns whether there was a valid, binding, enforceable contract.

> 1.    <u>Phased Discovery</u>.    Discovery shall be divided into two phases. The first phase of discovery shall be limited to discovery on the following issues (the "Phase I Issues"):
>
> a.  Whether one or more of the Plaintiffs reached an enforceable oral agreement with Window World, Inc. ("Window World") giving Plaintiffs exclusive rights to use the Window World trademarks in the entire Atlanta market, as alleged in paragraphs 13, 14, and elsewhere in Plaintiffs' complaint.
>
> b.  If an enforceable oral agreement was reached, each and every term comprising the agreement and the consideration supporting the oral agreement.
>
> Discovery on all other factual and legal issues, including, by way of example only, those relating to the validity and enforceability of any written documents signed by any Plaintiff and Window World, and whether the terms of any such written documents govern the parties' relationship or superseded any prior oral agreements between them (the "Phase II Issues"), will be stayed pending final adjudication of all legal claims in Case Nos. 15-CVS-1/15-CVS-2.  When all legal claims in Case Nos. 15-CVS-1/15-CVS-2 have been fully and finally adjudicated, the Parties will meet and confer as to the subjects on which discovery is still

required in this matter and a schedule for completion of any such second phase of discovery, dispositive motions, and trial.

(Second Am. CMO 1–2.)

20. Additionally, the Second Amended CMO restricted summary judgment motion practice on Phase I issues in certain ways:

Following completion of discovery on Phase I Issues in this matter, and within the deadlines set forth below, the Parties may file dispositive motions on the Phase I Issues identified above, subject to the conditions and limitations identified above. With respect to any dispositive motions filed on Phase I Issues, the Parties have expressly stipulated and agreed to, and the Court hereby sets, the following restrictions: **(1)** Defendants may offer evidence of Plaintiffs' execution of any written documents only for the purpose of establishing Plaintiffs' acts, omissions, conduct, or state of mind (including but not limited to knowledge, intent, plan, or motive) with respect to the existence or non-existence of an oral agreement between any Plaintiff and Window World and for no other purpose; **(2)** Plaintiffs reserve the right to argue that any evidence Defendants offer under clause (1) is not relevant to the question of whether an oral agreement was formed between any Plaintiff and Window World; **(3)** Plaintiffs may rebut any evidence Defendants offer under clause (1) with their own evidence of Plaintiffs' acts, omissions, conduct, or state of mind (including but not limited to knowledge, intent, plan, or motive); **(4)** Defendants reserve the right to argue that any evidence Plaintiffs offer under clause (3) is not relevant to the question of whether an oral agreement was formed between any Plaintiff and Window World; and **(5)** Defendants shall not use evidence of Plaintiffs' execution of any written documents to make any argument or contention that relies on, assumes, or suggests that such documents constitute valid and enforceable agreements, or that the terms of such documents govern the parties' relationship, including but not limited to any argument that references or relies on any merger clause contained in such documents or on the parol evidence rule. Nothing herein (a) constitutes an admission by any Party that any particular evidence is relevant or admissible for purposes of Phase I Issues or otherwise, or (b) is meant to limit, prejudice, or otherwise affect in any way the scope of discovery, the Parties' positions, dispositive motions, or trial with respect to any Phase II Issues or any issue in Case Nos. 15-CVS-1/15-CVS-2.

(Second Am. CMO 2–3.)

21.    On 25 November 2020, Defendants filed their Motion to Amend.  (Defs.' Joint Mot. Leave Amend Answers to Assert Additional Affirmative Defenses, ECF No. 137.)[4]  Defendants filed their corrected Summary Judgment Motion on 22 December 2020.  (Defs.' Mot. Summ. J., ECF No. 153.)

22.    After full briefing, the Court held a hearing on the Motions on 16 February 2021 by WebEx videoconference at which all parties were represented by counsel. The Motions are now ripe for resolution.

III.

ANALYSIS

23.    Through their Motion to Amend, Defendants seek to amend their answers to add the affirmative defense of statute of limitations and Saville additionally seeks to amend his answer to add the affirmative defense of waiver.  (Defs.' Br. Supp. Joint Mot. Leave Amend Answers to Assert Additional Affirmative Defenses 2 [hereinafter "Defs.' Br. Supp. Mot. Amend"], ECF No. 138.)  Defendants seek summary judgment establishing that (i) Edwards and Whitworth did not enter into an oral contract; (ii) Plaintiffs' declaratory judgment and breach of contract claims are time-barred; and (iii) Plaintiffs waived their breach of contract claim.  (Defs.' Br. Supp. Mot.

---

[4] Defendants moved for leave to file a supplemental reply brief in further support of the Motion to Amend, (Defs.' Joint Mot. Leave File Suppl. Reply Br. Supp. Mot. Amend Answers, ECF No. 181), contending that Plaintiffs raised arguments in their opposition to the Summary Judgment Motion that should have been raised in Plaintiffs' earlier opposition to the Motion to Amend, after Defendants had already filed their reply brief in support of that motion, (Defs.' Reply Br. Supp. Joint Mot. Leave Amend Answers to Assert Additional Affirmative Defenses, ECF No. 160).  The Court granted Defendants' motion for leave to file a supplemental reply brief in its 15 February 2021 e-mail to counsel.  Defendants subsequently filed their supplemental reply brief.  (ECF No. 186.)

Summ. J. [CORRECTED – Original Filed Dec. 11, 2020] 41–84 [hereinafter "Defs.' Br. Supp. Mot. Summ. J"], ECF No. 154.)  The Court addresses each motion in turn, starting with the Motion to Amend and concluding with the Summary Judgment Motion.

A.    Defendants' Motion to Amend

24.    Defendants seek leave to amend their answers to include additional affirmative defenses based on Edwards's 8 October 2020 deposition in order to advance these defenses as part of their Phase I Summary Judgment Motion.  (Defs.' Br. Supp. Mot. Amend 2.)  According to Defendants, Edwards admitted for the first time at his 8 October 2020 deposition that, as early as 2008, "he was aware that his alleged oral contract for the 55-county Atlanta DMA would directly impact the trade areas of four other owners who are currently, and who have been for many years, operating under separate written contracts with Window World."  (Defs.' Br. Supp. Mot. Amend 5; *see also* Edwards Dep. 58:3–59:16, 197:15–198:25, 292:8–23, 304:17–308:16.)  As such, Defendants contend that it was not until they reviewed the deposition transcript that they identified a viable statute of limitations defense. (Defs.' Br. Supp. Mot. Amend 7.)  Furthermore, although the Window World Defendants asserted a waiver defense in their answer, (Window World Defs.' Answer 8–9), Saville contends that he did not become "fully aware of the viability of a waiver defense" prior to Edwards's 8 October 2020 deposition, (Defs.' Br. Supp. Mot. Amend 7).

25. In response, Plaintiffs contend that Defendants did not, in fact, receive the information on which Defendants base their Motion to Amend from Edwards's deposition. (Pls.' Br. Opp'n Defs.' Mot. Amend 2 [hereinafter "Pls.' Mot. Amend Opp'n Br."], ECF No. 155.) Instead, Plaintiffs argue that the facts on which Defendants base these defenses were either already pleaded in Plaintiffs' complaint or come from third-party witnesses known to Defendants at the time they filed their answers. (Pls.' Mot. Amend Opp'n Br. 2, 9–15.) Therefore, Plaintiffs argue, Defendants unduly delayed seeking to include these additional affirmative defenses until nine days prior to the original Phase I summary judgment deadline and that permitting Defendants to rely upon these defenses in their Phase I Summary Judgment Motion, after the close of Phase I discovery, would materially prejudice Plaintiffs. (Pls.' Mot. Amend Opp'n Br. 7–21.)

26. Under Rule 15(a) of the North Carolina Rules of Civil Procedure ("Rule(s)"), after a responsive pleading has been served, "a party may amend his pleading only by leave of court or by written consent of the adverse party" and "leave shall be freely given when justice so requires." N.C. R. Civ. P. 15(a). Nonetheless, "the rules still provide some protection for parties who may be prejudiced by liberal amendment[,]" *Henry v. Deen*, 310 N.C. 75, 82 (1984), and denial of a motion to amend is justified for reasons of "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice and futility of the amendment[,]" *JPMorgan Chase Bank, N.A. v. Browning*, 230 N.C. App. 537, 541 (2013) (citation omitted); *see Vaughan v. Mashburn*, 371 N.C. 428, 433 (2018) ("[A]mendments should be freely

allowed unless some material prejudice to the other party is demonstrated." (quoting *Mauney v. Morris*, 316 N.C. 67, 72 (1986))). "The granting or denial of a motion to amend is within the sound discretion of the trial judge, whose decision is reviewed under an abuse of discretion standard." *JPMorgan Chase Bank, N.A.*, 230 N.C. App. at 541 (citation omitted).

27. Plaintiffs argue that Defendants' request to amend their answers, which Plaintiffs contend is based upon information previously available to Defendants rather than new evidence, was made more than two years after Defendants filed their answers and just days prior to the original summary judgment deadline with respect to Phase I issues and therefore should be denied due to undue delay. (Pls.' Mot. Amend Opp'n Br. 7–15.) Amendment under Rule 15, however, turns on whether a party will be materially prejudiced by the proposed amendment, *see Vaughan*, 371 N.C. at 433; *see also Chappell v. N.C. Dep't of Transp.*, 374 N.C. 273, 280 (2020) ("We have previously held that delay in seeking to amend a pleading, and particularly where it causes prejudice to a party, can justify a decision to deny the amendment." (citing *News & Observer Pub. Co. v. Poole*, 330 N.C. 465, 485 (1992))), and Plaintiffs have conceded that no prejudice will result unless the Court considers the proposed statute of limitations and waiver defenses during the Second Amended CMO's Phase I process. (Feb. 16, 2021 Hr'g Tr. 68:12–17, ECF No. 190; Pls.' Mot. Amend Opp'n Br. 18 n.13.)

28. As set out in the Second Amended CMO, Phase I of this litigation focuses on contract formation. (Second Am. CMO 1–2.) Although Defendants contend that the

Second Amended CMO should operate as a contract among the parties and be enforced according to principles of contract law, *see Reaves v. Hayes*, 174 N.C. App. 341, 343–44 (2005), it is an order of the Court. The rules of contract law do not apply when the Court interprets its own order. But, even if they did, the Court interprets the language that follows the delineation of the two Phase I issues in the Second Amended CMO to be focused solely on contract formation, such that "enforceability" refers to the validity of a contract in terms of both mutual assent and definiteness of terms. Because the affirmative defenses of statute of limitations and waiver concern whether a valid and enforceable agreement may be the subject of a legal action based on conduct that occurs *after* the parties enter into a contract, these are not issues of contract formation and therefore fall within Phase II summary judgment motion practice, not Phase I.

29. Having thus concluded that the defenses of statute of limitations and waiver are properly addressed in Phase II, and in light of Plaintiffs' concession that no prejudice will result should the Court delay consideration of these defenses until Phase II, the Court, in the exercise of its discretion, shall grant the Motion to Amend. Accordingly, the Court will permit Saville to amend his answer to assert the affirmative defenses of statute of limitations and waiver and will permit the Window World Defendants to amend their answer to assert the affirmative defense of statute of limitations. The Court denies the Motion to Amend, however, to the extent it seeks Phase I consideration of the parties' arguments related to these defenses and,

accordingly, will disregard these arguments when deciding Defendants' Summary Judgment Motion below.

### B. Defendants' Summary Judgment Motion

30. Under Rule 56, "[s]ummary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Da Silva v. WakeMed*, 375 N.C. 1, 10 (2020) (quoting N.C. R. Civ. P. 56(c)). "A genuine issue of material fact is one that can be maintained by substantial evidence." *Curlee v. Johnson*, 2021-NCSC-32, ¶ 11 (citation and internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference[.]" *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681 (2002) (cleaned up). "The summary judgment standard requires the trial court to construe evidence in the light most favorable to the nonmoving party." *Draughon v. Evening Star Holiness Church of Dunn*, 374 N.C. 479, 482 (2020).

31. "The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579 (2002). The movant may meet this burden either (1) "by proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense"[5] or (2) "by

---

[5] The Court notes that although consideration of whether the non-moving party's claim would be barred by an affirmative defense is generally appropriate at summary judgment, the

showing through discovery that the opposing party cannot produce evidence to support an essential element of [its] claim[.]" *Dobson v. Harris*, 352 N.C. 77, 83 (2000) (citations omitted). If the movant meets its burden, "the burden then shifts to the nonmovant to come forward with specific facts establishing the presence of a genuine factual dispute for trial." *Liberty Mut. Ins. Co.*, 356 N.C. at 579; *see also* N.C. R. Civ. P. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").

32. Defendants contend that the undisputed evidence shows that there was no meeting of the minds as to the scope of Edwards's trade area, a failure to reach a material term of the oral contract allegedly made between Edwards and Whitworth in November 2008 that requires the entry of summary judgment for Defendants. (Defs.' Br. Supp. Mot. Summ. J. 48.) First, Defendants assert that although Edwards understood that he would receive the entire fifty-five county Atlanta DMA as his trade area, the evidence shows that Edwards received only the exclusive right to operate in the fourteen counties that comprised Tony and Mark Turner's former trade areas. (Defs.' Br. Supp. Mot. Summ. J. 49–52.) Second, Defendants argue that, as part of continued negotiations that occurred after the alleged oral contract was made, Whitworth modified the terms of the initial contract, requiring Edwards to pay off Tony Turner's accumulated debt and to allow Mark Turner to continue operating

phased summary judgment motion practice provided in the Second Amended CMO requires that arguments based on affirmative defenses be raised in Phase II, rather than Phase I, summary judgment motion practice.

until October 2009 when his license expired, which Edwards did gratuitously without supporting consideration. (Defs.' Br. Supp. Mot. Summ. J. 48, 50.) Third, Defendants argue that the parties' subsequent actions demonstrate a lack of mutual assent as to the scope of Edwards's trade area, contending that (i) Plaintiffs signed two licensing agreements, neither of which included the entire Atlanta DMA as their trade area; (ii) Plaintiffs' website listed their trade area as including only those fourteen counties that made up Tony and Mark Turner's former trade areas; and (iii) Window World never revised the licensing agreements of other Window World store owners to remove those counties included in the Atlanta DMA from their exclusive trade areas. (Defs.' Br. Supp. Mot. Summ. J. 49–52, 55.)

33. In response, Plaintiffs argue that their forecast of the evidence is sufficient to make out a prima facie case for the existence of an oral contract. (Pls.' Summ. J. Opp'n Br. 24, ECF No. 173.) First, Plaintiffs contend that the record evidence shows that the oral contract Whitworth and Edwards negotiated over a series of conversations contained the following three material terms: (i) the trade area would consist of the entire Atlanta DMA; (ii) Edwards would pay off Tony Turner's debt; and (iii) Mark Turner would continue operating in South Atlanta until the expiration of his license. (Pls.' Summ. J. Opp'n Br. 28.) Plaintiffs further contend that the oral agreement to these terms was corroborated by other Window World executives. (Pls.' Summ. J. Opp'n Br. 24–26.) Plaintiffs also argue that Window World regularly entered into oral contracts with store owners, particularly in regard to trade areas. (Pls.' Summ. J. Opp'n Br. 14–16, 29.) And finally, Plaintiffs assert that, beginning in

December 2008, they carried out their obligations under the oral agreement by taking possession of Tony Turner's store, operating in the NEGA trade area, and paying off Tony Turner's debt. (Pls.' Summ. J. Opp'n Br. 29–30.)

34. Separately, Plaintiffs contend that Defendants' arguments rely primarily on inconsistent statements made by Edwards and inferences drawn from the parties' post-contract conduct, neither of which is relevant to the issue of contract formation and the focus of Phase I discovery and summary judgment motion practice. (Pls.' Summ. J. Opp'n Br. 23.)

35. "To constitute an enforceable 'verbal agreement, the parties must express themselves in such terms that the Court can ascertain to a reasonable degree of certainty what they intended by their agreement.' " *Thomas v. McMahon*, 2015 NCBC LEXIS 67, at *26 (N.C. Super. Ct. June 23, 2015) (quoting *F. Indus., Inc. v. Cox*, 45 N.C. App. 595, 599 (1980)). North Carolina courts consider "(1) whether there was an offer and acceptance of the terms . . . , and (2) 'if so, were the terms agreed upon sufficiently definite and certain' " to determine if an oral contract was formed. *Kornegay v. Aspen Asset Grp., LLC*, 204 N.C. App. 213, 220 (2010) (quoting *Williams v. Jones*, 322 N.C. 42, 48 (1988) (concluding plaintiff presented sufficient evidence of offer and acceptance and definite and certain terms to permit a jury to find that the parties entered into an enforceable oral contract)); *see also Health & Beauty Techs., Inc. v. Merz Pharma GmbH KgaA*, No. 7:18-CV-117-FL, 2020 U.S. Dist. LEXIS 2706, at *11 (E.D.N.C. Jan. 8, 2020) (applying North Carolina law, "[a] contract, express or implied, requires mutual assent, mutuality of promises, and definite terms"). "There

must be a meeting of the minds so that the parties assent to the same thing in the same sense." *Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 11 (1968).

36. Significantly for present purposes, our Supreme Court has held that "[w]hether mutual assent is established and whether a contract was intended between parties are questions for the trier of fact." *Creech v. Melnik*, 347 N.C. 520, 527 (1998) (citation omitted). Here, it is undisputed that there were only two parties to the alleged oral contract: Edwards and Whitworth. Due to Whitworth's death in 2010, only Edwards can testify as to the content of the conversations he and Whitworth had regarding the terms of that agreement. According to Edwards, the agreement consisted of the three terms identified above: (i) Edwards would assume Tony Turner's debt; (ii) Mark Turner would continue to operate in South Atlanta until the expiration of his license; and (iii) Edwards would take over both stores with a trade area that consisted of the fifty-five county Atlanta DMA. (Edwards Dep. 17:14–15, 25:14–20, 48:17–51:7, 53:3–19, 55:15–56:7, 96:14–99:15, 135:4–5; *see also* Additional Excerpts Edwards Dep. 34:17–25.) Blair Ingle and Sean Gallagher, corporate officers of Window World at the time, have corroborated both the existence of the oral agreement and Edwards's understanding of its terms, particularly with respect to the scope of his trade area. (*See* Ingle Dep. 158:21–159:13, 160:14–161:20; Gallagher Aff. ¶¶ 20–21[6]; Gallagher Dep. 288:13–289:18.) It is also undisputed that

---

[6] In their reply, Defendants contend that Gallagher's affidavit "directly contradicts his prior deposition testimony and should be stricken as a sham affidavit[,]" claiming that "Gallagher **did not** confirm in his deposition . . . that Whitworth granted the Atlanta DMA to Edwards." (Reply Br. Supp. Defs.' Mot. Summ. J. 15 [hereinafter "Defs.' Reply Supp. Mot. Summ. J."], ECF No. 184.) The Court disagrees. In his affidavit, Gallagher states, "Todd [Whitworth] promised Mike Edwards that, if Mike would take over the Atlanta store, including paying off

Plaintiffs began operating in Atlanta and paying off Tony Turner's debt months prior to executing a licensing agreement with Window World. (Edwards Dep. 94:4–100:23; Newton Aff. ¶¶ 20, 22, 28, 60; *see also* Additional Excerpts Edwards Dep. 156:10–158:3.)

37. Based on this showing, the Court concludes that Plaintiffs have forecast sufficient evidence to make out a prima facia case of mutual assent and definite terms, permitting their breach of contract claim to survive summary judgment under Rule 56. *See Kornegay*, 204 N.C. App. at 224 ("[W]hen 'the plaintiff presented evidence which demonstrates that the terms alleged by defendants to be indefinite were in fact sufficiently well delineated to all parties,' it did not matter that it was 'contested by defendants.'" (quoting *Williams*, 322 N.C. at 52)). As Plaintiffs correctly note, inconsistencies in Edwards's testimony affect only his credibility as a witness and, at this stage in the proceedings, any inferences to be drawn from the parties' post-contract conduct should be drawn in favor of the Plaintiffs. As such, Defendants

---

vendor debt, Mike would receive the entire Atlanta DMA market." (Gallagher Aff. ¶ 21.) Gallagher's 2017 deposition testimony is not contrary to that assertion:

> Q. Did you ever learn from anyone that Mr. Edwards' view was that Todd Whitworth had promised him the whole [Atlanta] DMA?
> A. I recall Mike [Edwards] expressing to me that Todd had said something along those lines.
>
> . . . .
>
> Q. But I'm trying to focus on this alleged promise that Todd Whitworth made, and you're telling me that at some point in time [Edwards] said something to the effect that Todd Whitworth had promised him that?
> A. Yes.

(Defs.' Reply Supp. Mot. Summ. J. Attach. C Dep. Sean Gallagher, dated Nov. 6, 2017, at 288:22–289:1, 289:14–18 [hereinafter "Gallagher Dep."], ECF No. 183.4.)

are not entitled to judgment as a matter of law that Plaintiffs did not reach an enforceable oral agreement with Window World giving Plaintiffs the exclusive right to the entire Atlanta DMA trade area.

38. Therefore, viewing the evidence of record in the light most favorable to Plaintiffs, the Court concludes that there is a genuine issue of material fact as to whether Edwards and Whitworth entered into an enforceable oral contract and will therefore deny Defendants' Phase I Summary Judgment Motion.

IV.

CONCLUSION

39. **WHEREFORE**, the Court hereby **ORDERS** as follows:

 a. The Court, in the exercise of its discretion, hereby **GRANTS** Defendants' Motion to Amend and shall permit Saville to amend his answer to assert the affirmative defenses of statute of limitations and waiver and the Window World Defendants to amend their answer to assert the affirmative defense of statute of limitations but **DENIES** the Motion to Amend to the extent that Defendants seek Phase I consideration of these permitted amendments.

 b. Saville shall file his amendment to his answer, consistent with Exhibit A to the Motion to Amend, within five days of the date of entry of this Order.

c. The Window World Defendants shall file their amendment to their answer, consistent with Exhibit B to the Motion to Amend, within five days of the date of entry of this Order.

d. The Court hereby **DENIES** Defendants' Summary Judgment Motion but shall permit Defendants to raise their summary judgment arguments relating to their affirmative defenses of statute of limitations and waiver during summary judgment motion practice in Phase II of this proceeding.

**SO ORDERED**, this the 22nd day of September, 2021.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge